# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2138 | **DATE** | 11/21/2002 |
| **CASE TITLE** | Anthony Wilcox vs. American Stores, d/b/a Jewel-Osco | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendants' Motion for Summary Judgment is GRANTED and this case is DISMISSED in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | date mailed notice | |

U.S. DISTRICT COURT
CLERK

02 NOV 21 PM 5: 17

central Clerk's Office   mailing deputy initials

**FILED**

NOV 21 2002

Judge Harry D. Leinenweber
U. S. District Court

ANTHONY WILCOX,

        Plaintiff,

    v.

AMERICAN STORES, d/b/a JEWEL-OSCO,

        Defendants.

Case No. 01 C 2138

Hon. Harry D. Leinenweber

NOV 2 2 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Wilcox ("Wilcox") brings this complaint against Jewel Food Stores, Inc. ("Jewel") – erroneously referred to in Wilcox's submissions as American Stores d/b/a Jewel-Osco – alleging violations of the Americans with Disabilities Act of 1990 (codified at 42 U.S.C. § 12101 et seq.) (the "ADA"). Wilcox's complaint originally contained four counts: (1) failure to accommodate in violation of 42 U.S.C. § 12112 ("Count 1"); (2) disparate impact in violation of 42 U.S.C. § 12112 ("Count 2"); (3) retaliation in violation of 42 U.S.C. § 12203 ("Count 3"); and (4) wrongful discharge in violation of Illinois public policy ("Count 4"). On September 27, 2001, the court granted Wilcox's oral motion to withdraw Count 2. On October 26, 2001, the court granted Jewel's motion to strike paragraph 37 of the complaint (containing certain putative class claims) and to dismiss Count 4. Presently before the court is Jewel's unopposed motion for summary



judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the court grants the motion and dismisses this action in its entirety.

## MOTION FOR SUMMARY JUDGMENT

### Legal Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Supreme Court has emphasized "that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue [of material fact] for trial." *Id.* at 249. In performing this task, all factual disputes are resolved, and all reasonable inferences are drawn, in favor of the nonmoving party. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002).

The burden is initially upon the movant to identify those portions of "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits," if any, that the moving party believes demonstrate an absence of a genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest upon the mere allegations contained in the nonmoving party's pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989). Accordingly, summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. In such a situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### Failure to Respond to Motion for Summary Judgment

Although Wilcox was not represented by counsel in connection with the instant summary judgment motion, Jewel has provided him with a document, captioned "Notice To Pro Se Litigants Opposing Summary Judgment," explaining in legally sufficient terms the purpose of a summary judgment motion, Wilcox's obligations to

- 3 -

respond and the consequences for failing to do so. *See* N.D. Ill. Local R. 56.2; *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992). Despite receiving this notice, Wilcox did not file a response to Jewel's summary judgment motion. Federal Rule of Civil Procedure 56(e) is clear that once a summary judgment motion "is made and supported as provided in [Rule 56]," the nonmoving party must respond by "set[ting] forth specific facts showing there is a genuine issue for trial. If the [nonmoving] party does not so respond, summary judgment, if appropriate, shall be entered against the [nonmoving] party." FED.R.CIV.P. 56(e); *see also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)(Under Rule 56(e), "if the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her." (emphasis in original)).

Under Local Rule 56.1(a)(3) of the Local Rules of the United States District Court for the Northern District of Illinois, a party moving summary judgment must submit a statement of material facts in the form of short numbered paragraphs supported by specific references to the factual record. Jewel has done so. Under Local Rule 56.1(b)(3), the nonmoving party must in turn submit a response to each such paragraph, including (in the case of disagreement) specific references to the factual record. Wilcox has failed to do so. Wilcox's dereliction carries drastic

- 4 -

consequences, as "[a]ll material facts set forth in the statement required of the moving party will be deemed to be *admitted* unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(B)(emphasis supplied).

The Seventh Circuit has explicitly "endorsed the exacting obligation[s] these [local] rules impose on a party contesting summary judgment" and has "repeatedly upheld the[ir] strict enforcement . . . , sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent [local] rule and thereby conceded the movant's version of the facts." *Waldridge*, 24 F.3d at 922. As the Seventh Circuit has acknowledged, "district courts are not obligated in our adversary system to scour the record looking for factual disputes." *Id.* Likewise here, the court will not scour the record on Wilcox's behalf. Rather, the court accepts as undisputed Jewel's properly supported statements of material fact contained in its Local Rule 56.1(a)(3) Statement of Uncontested Material Facts. The court's task then becomes to determine whether "given the undisputed facts, summary judgment is proper as a matter of law." *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992).

### BACKGROUND

Wilcox worked as a bakery clerk in Jewel's bakery department from September 1989 until he was terminated on December 12, 1998.

A bakery clerk has many and varied duties, among them preparing and processing bakery products for sale, filling display cases and replenishing stock on shelves. (Def's 56.1 Stmt. ¶¶ 8-12, 31; Rosy Aff. Exh. A.) Some of the central duties of a bakery clerk are physically demanding, including transporting pallets and unloading boxes of bakery products, lifting trays of bakery products onto and between racks, flipping over large steel or iron baking pans full of baked bread, and occasionally lifting buckets of icing weighing as much as 50 pounds. *(Id.)* The written job description for a bakery clerk requires the ability "constantly" to lift or carry up to 50 pounds, and "constantly" to push or pull up to 300 pounds. *(Id.)*

On October 14, 1997, Wilcox suffered a back injury while loading and unloading frozen bakery products into and out of a truck. Wilcox continued to work until December 11, 1997, at which point he obtained a doctor's slip indicating that he "just couldn't work anymore." (Def's 56.1 Stmt. ¶ 15; Wilcox Dep. at 64-65.) On February 27, 1998, Wilcox underwent a surgical procedure for a herniated disk and injured nerve known as a decompressive laminectomy. Approximately two months after this surgery, Wilcox experienced an almost 50% reduction in his symptoms and Dr. Foydel, Wilcox's treating physician, characterized Wilcox's case as "just a garden variety injury, surgery and recovery, nothing unusual." (Def's 56.1 Stmt. ¶ 15; Foydel Dep. at 64-65.) On May 28, 1998,

Dr. Foydel examined Wilcox again and formed the opinion that he could return to work full-time starting June 1, 1998 with a 30-pound lifting restriction. Dr. Foydel wrote a note to that effect (which Wilcox gave to his manager), and indicated that the lifting restriction would last until July 1, 1998 and then be reevaluated.

Wilcox returned to work on June 8, 1998 at 5:00 a.m. After approximately two-and-a-half hours on the job, Wilcox complained of back pain to his manager and was allowed to sit down and rest. Following this short break, Wilcox "realized [he] couldn't go on with doing the work that [he] was supposed to be doing down there [in the bakery department]. It was just too much for [him]." (Def's 56.1 Stmt. ¶ 28; Wilcox Dep. at 92.) Wilcox asked his manager if he could be entirely relieved of his baking duties and instead fill out administrative paperwork. Wilcox's manager declined and suggested that "[i]f [Wilcox] can't handle [his] job, [to] go up and talk to the store manager." (Wilcox Dep. at 88.) Wilcox did approach the store manager, telling him "I can't bake anymore," and asking if he could instead do paperwork for any other department in the store. (Def's 56.1 Stmt. ¶ 28; Wilcox Dep. at 88.) The store manager also declined and advised that if Wilcox was unable to perform the duties of his job, that he "go home and get another note from [his] doctor and bring it to [the store manager] right away." (Wilcox Dep. at 88.) At 8:00 a.m., Wilcox left for the day.

After working three hours on June 8, 1998, Wilcox then obtained a series of doctor's slips indicating that he was unable to return to work. (Def's 56.1 Stmt. ¶ 36; Wilcox Dep. Exh. 15; Foydel Dep. Exh. 18, 20.) The latest doctor's slip in the record, dated August 24, 1998, reads simply: "This patient is unable to return to work at this time." (Foydel Dep. Exh. 20.) Wilcox testified at his deposition that between August 1998 and December 4, 1998, he was "totally restricted from work." (Wilcox Dep. at 111.) Wilcox stated that he "might have been able to do something, but [he is] not sure what." (Id.)

On December 4, 1998, a diagnostic procedure called a discogram was performed on Wilcox's back to determine whether spinal fusion surgery would be beneficial. The discogram was positive. Dr. Foydel opined that, as of December 4, 1998, there were large portions of Wilcox's job description that Wilcox simply could not perform, or that he would be physically compromised in performing. (Def's 56.1 Stmt. ¶ 43; Foydel Dep. at 39.) Dr. Foydel further testified that Wilcox would "risk doing further harm to himself if he attempted to perform all of [his] job functions[,] especially lifting." (Foydel Dep. at 39.) On December 21, 1998, Wilcox applied for Social Security Disability benefits. In his application, he averred that (i) he was entirely unable to stand, bend or lift, (ii) his physical condition had not improved since December 11, 1997 (the date Wilcox reported that he stopped

working) and (iii) he was simply awaiting further surgery. (Def's 56.1 Stmt. ¶ 45.)

Under Jewel's leave policy in effect at that time, Wilcox was entitled to 52 weeks of paid disability leave. However, Jewel would not continue to employ an individual who could not perform his job, with or without a reasonable accommodation, for more than 52 weeks. Under Jewel's leave policy, Wilcox's return to work for three hours on June 8, 1998 did not entitle him to a fresh 52 weeks of paid leave. Accordingly, because Wilcox had exhausted his 52 weeks of disability leave and was still unable to perform his job duties, Jewel terminated Wilcox's employment on December 12, 1998. (Def's 56.1 Stmt. ¶ 48.) At the time Wilcox's employment was terminated, there were no other open positions at Jewel for which Wilcox qualified which would have accommodated his medical restrictions. (Def's 56.1 Stmt. ¶¶ 47, 53.)

## DISCUSSION

### *Underlying EEOC Charge*

The ADA has expressly adopted the enforcement procedures governing Title VII actions, including all filing procedures and timing requirements. *See* 42 U.S.C. § 12117(a). In Illinois, an aggrieved person must file a charge of discrimination under Title VII with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e); *Patt v. Family Health Systems, Inc.,* 280

F.3d 749, 752 (7th Cir. 2002). "Failure to file within the allotted time renders the charge untimely and the claimant is precluded from bringing an action in court." *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998); *see also Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. ___, 122 S.Ct. 2061, 2070 (2002)("A [Title VII] claim is time-barred if it is not filed within [Title VII] time limits."). "The period begins to run from the date of the adverse personnel action." *Fairchild*, 147 F.3d at 574. Because Wilcox filed his underlying EEOC charge on July 13, 1999, any alleged discriminatory conduct by Jewel before September 16, 1998 – which, incidentally, is also the date Wilcox identified in his EEOC charge as the "earliest date of alleged violation" (Def's 56.1 Stmt. ¶ 25)) – is time-barred and cannot form the basis of his ADA suit.

### COUNT 1

### *Events Prior to September 16, 1998*

Count 1 of Wilcox's complaint, entitled "Failure to Accommodate," alleges that Jewel violated 42 U.S.C. § 12112 "in part because it failed to offer Wilcox alternate work arrangements, including a light duty assignment or allowing others to do the heavy lifting required by his job when he return [sic] to work." (Compl. ¶ 25.) The record is clear that, following Wilcox's February 27, 1998 surgery, he only returned to work once – on June 8, 1998. (Def's 56.1 Stmt. ¶ 23.). Although the filing of a

timely charge of discrimination with the EEOC is subject to the doctrines of "waiver, estoppel and equitable tolling," *Zipes v. Trans World Airlines*, 455 U.S. 385, 293 (1982). Wilcox has not provided any legal argument, nor pointed to any facts, that would justify their application in this case. *See Maddox v. Capitol Bankers Life Ins. Co.*, 1997 WL 47449 at *8 (N.D. Ill. Jan. 30, 1997)(plaintiff bears burden of justifying application of waiver, estoppel or equitable tolling). Accordingly, to the extent Count 1 is tied to the events of June 8, 1998, it is time-barred.

Even if Count 1 were not time-barred, Wilcox has failed to demonstrate that there is a genuine issue whether he suffered from a "disability" under the ADA on June 8, 1998. "The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477 (1999); 42 U.S.C. § 12112(a). A "disability" is defined in the ADA as "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2)(A); *see also* 45 C.F.R. § 84.3(j)(2)(ii) (listing examples of "major life activities"). It is Wilcox's "burden on summary judgment to show he could come up with evidence to show that he could meet his ultimate burden of showing an ADA recognized disability." *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001).

Wilcox claims that "[a]fter treatment and surgery in 1998, [he was] substantially limited in the major life activities of work, standing and walking." (Compl. ¶ 9.) However, when Wilcox returned to work on June 8, 1998, the only limitation prescribed by his doctor was a 30-pound weight-lifting restriction, the medical necessity of which was to be reevaluated on July 1, 1998. (Def's. 56.1 Stmt. ¶ 19.) Such a limitation simply does not qualify as a substantial limitation on working, and thus is not a "disability" under the ADA. *Contreras*, 237 F.3d at 763; *Baxter v. Northwest Airlines, Inc.*, 1998 WL 603121 at *6 (N.D. Ill. Sept. 4, 1998).

Moreover, when Wilcox did return to work, he was presumably not substantially limited in his ability to walk and stand, and Wilcox has adduced no evidence that would permit a contrary conclusion. The evidence in the record is no friend to Wilcox on this point. As early as two months following Wilcox's surgery, Dr. Foydel considered Wilcox's case "just a garden variety injury, surgery and recovery, nothing unusual," (Def's 56.1 Stmt. ¶ 17); two months later, on May 28, 1998, Dr. Foydel encouraged Wilcox to "get back into the flow of normal life and try to continue on and keep as active as possible." (Def's 56.1 Stmt. ¶ 20; Wilcox Dep. at 77.) In his deposition, Wilcox characterized the condition of his back at his May 28, 1998 doctor's visit in mild terms, as follows: "I expressed to [Dr. Foydel] that I was a still a little

~ had a sore back." (Wilcox Dep. at 77.) In failing to respond to Jewel's summary judgment motion, Wilcox has by necessity failed to put forth any evidence from which a jury could conclude that on June 8, 1998 Wilcox was "substantially limited in the major life activities of . . . standing and walking" (Compl. ¶ 9), and the evidence in the record in fact supports the opposite conclusion. Accordingly, Wilcox has not shown that he could meet his ultimate burden of showing that he was "disabled" under the ADA as of June 8, 1998.

### Events After September 16, 1998

Even to the extent Count 1 is meant to encompass events on or after September 16, 1998, it would still fail. As noted above, the ADA only protects "*qualified* individuals with a disability." 42 U.S.C. § 12112(a) (emphasis supplied). A "qualified individual with a disability" is defined, in relevant part, as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* 42 U.S.C. § 12111(9) (providing non-exclusive list of types of "reasonable accommodation"). "[T]he plaintiff has the burden of showing that he can perform the essential functions of the job, with or without a reasonable accommodation." *Basith v. Cook County*, 241 F.3d 919, 931 (7th Cir. 2001); *see also McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1164 (7th Cir. 1997)("The

- 13 -

plaintiff bears the burden of placing himself within the confines of the statute by at least creating a genuine issue of material fact as to whether he is a "'qualified individual with a disability.'"). "The determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision." *Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996).

To determine the essential functions of a position, a court may consider, but is not limited to: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3). The uncontradicted evidence in the record indicates that the essential functions of a bakery clerk include, among other things, "transporting pallets of bakery products," "unload[ing] boxes from pallets and stor[ing them] in . . . freezers," "removing boxes of bakery product from the freezer," lifting trays full of bakery products onto and between racks, flipping over large steel or iron baking pans full of baked bread, and occasionally lifting buckets of icing weighing as much as 50

pounds. (Def's 56.1 Stmt. ¶¶ 8-12, 31; Rosy Aff. Exh. A.) The duties of a bakery clerk involve "constant lifting" and carrying of up to 50 pounds and "constant pushing/pulling" of up to 300 pounds. (*Id.*)

After returning to work for just three hours on June 8, 1998 and experiencing significant back pain, Wilcox obtained a series of doctor's slips indicating that he was unable to return to work. (Def's 56.1 Stmt. ¶ 36; Wilcox Dep. Exh. 15; Foydel Dep. Exh. 18, 20.) The latest doctor's slip in the record, dated August 24, 1998, reads simply: "This patient is unable to return to work at this time." (Foydel Dep. Exh. 20.) Wilcox testified at his deposition that between August 1998 and December 4, 1998, he was "totally restricted from work." (Wilcox Dep. at 111.) Wilcox stated that he "might have been able to do something, but [he was] not sure what." (*Id.*)

Dr. Foydel testified that, as of December 4, 1998, there were large portions of Wilcox's job description that Wilcox simply could not perform, or that he would be physically compromised in performing. (Def's 56.1 Stmt. ¶ 43; Foydel Dep. at 39.) Dr. Foydel further testified that Wilcox would "risk doing further harm to himself if he attempted to perform all of [his] job functions[,] especially lifting." (Foydel Dep. at 39.) In settling his worker's compensation claim with the Illinois Industrial Commission on May 15, 2001, Wilcox signed a Settlement Contract Lump Sum

Petition and Order which represented that he was "temporarily totally disabled from 10/5/97 through 4/5/01." (Def's 56.1 Stmt. ¶ 50; Tracy Aff. Exh. A.) In Wilcox's pre-hearing memorandum in support of Social Security disability benefits, Wilcox, through his attorney, represented that "[b]y October 22, 1998, it was apparent that there would be no improvement in [his] pain from conservative therapy [and he] was prepared for additional surgery." (Def's 56.1 Stmt. ¶ 44; Soc. Sec. Adm. File 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 at s260.) In Wilcox's December 21, 1998 application for Social Security disability benefits, he averred that (i) he was entirely unable to stand, bend or lift, (ii) his physical condition had not improved since December 11, 1997 (the date Wilcox reported that he stopped working) and (iii) he was simply awaiting further surgery. (Def's 56.1 Stmt. ¶ 45.) As the Supreme Court has held, because "a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case . . . an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). In this case, Wilcox has proffered no explanation whatsoever.

Given these undisputed facts, it is clear that between September 16, 1998 and at least December 12, 1998, Wilcox was not

able to perform the essential duties of his job as a bakery clerk without a reasonable accommodation. Nor has Wilcox pointed to any evidence that would create a genuine issue of material fact as to whether he could perform his job with a reasonable accommodation -- a task that, given Wilcox's admitted incapacitation during this time, would seem well-nigh impossible. *See EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 952 (7th Cir. 2001)("Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise." (internal quotation marks omitted)). Even as a threshold matter, Wilcox would have had to come forward with evidence - which he did not do here - showing that he made a specific request after September 16, 1998 for a reasonable accommodation that would enable him to perform the essential duties of his job as a bakery clerk. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000)("[T]he standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches.").

Based on the admitted facts in this case, the only possible accommodations that Wilcox could even be considered to have requested after September 16, 1998 was reassignment to either (i) a bakery crew chief position in Jewel's store in Buffalo Grove, Illinois or (ii) a security officer position in Jewel's store at

3400 Western Avenue in Chicago, Illinois. Although "the ADA requires reassignment to a vacant position when the employee is no longer able to perform the essential functions of her employment, even with a reasonable accommodation," the employee must be "qualified for the vacant position." *McCreary*, 132 F.3d at 1165. Furthermore, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). "An employer is not obligated to 'bump' another employee in order to create a vacancy for the disabled employee. And the employer does not have to create a new position for the disabled employee." *McCreary*, 132 F3.d at 1165.

Importantly, Wilcox bears the burden of showing that, at the time he was terminated, "a vacant position exist[ed] and . . . [he] [wa]s qualified for that position." *Id.* In the instant case, Wilcox outright *admits* that (i) "[t]he bakery crew chief position for the Jewel store in Buffalo Grove, Illinois was filled at the time [he] was terminated" (Def's 56.1 Stmt. ¶ 53), (ii) "[he] was not qualified to perform the essential functions of [the security officer] position" (*Id.*), and (iii) "there was no other open position for which [he] was qualified which would have accommodated his restrictions" (*Id.*). Accordingly, summary judgment on Count 1 in favor of Jewel is appropriate.

## COUNT 3

Count 3 of Wilcox's complaint, entitled "Retaliation," alleges that Jewel violated 42 U.S.C. § 12203 when "it terminated Wilcox'[s] employment on December 1998 after he was injured at work and requested work-place accommodations." (Compl. ¶ 36.) Wilcox "may assert such a claim even if the underlying disability claim fails." *Williams v. Eastside Lumberyard & Supply Co.*, 190 F.Supp.2d 1104, 1119 (S.D. Ill. 2001).

The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203. "A plaintiff bringing a retaliation claim may prevail by presenting either direct evidence of discrimination or indirect evidence under the burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999). As Wilcox has provided no direct evidence of discrimination, he must make out a prima facie case of retaliation by "show[ing] that (1) he engaged in statutorily protected expression; (2) he suffered an adverse action by his employer; and (3) there is a causal link between the protected expression and the adverse action." *Yellow Freight System, Inc.*, 253 F.3d at 952.

Because Wilcox's employment was terminated, the second element is satisfied. As for the first element, the only statutorily protected expression that Wilcox points to is his alleged "request[ for] work-place accommodations." Although the statutory text itself does not appear to support the notion that requesting a reasonable accommodation is a protected activity, see *Williams*, 190 F.Supp.2d at 1120, "the Seventh Circuit has in the past treated an individual's request for an accommodation as statutorily protected activity," *Id.* (citing *Silk*, 194 F.3d at 800-01 and *Contreras*, 237 F.3d at 765). Based on the practice of the Seventh Circuit (and other federal courts that have considered the matter, see *Williams*, 190 F.Supp.2d at 1120), the court will likewise assume that requesting a reasonable accommodation is a protected activity for purposes of 42 U.S.C. § 12203. The court will also assume, for purposes of Count 3, that Wilcox made such a request.

Wilcox's retaliation claim founders on the third element. Not only has Wilcox failed to offer any argument or facts to support finding a causal link between any putative request for accommodation and the termination of his employment, he *admits* that Jewel terminated his employment on December 12, 1998 because he had exhausted his 52 weeks of paid disability leave and was still not able to perform his job with or without a reasonable accommodation. (Def's 56.1 Stmt. ¶¶ 47-48.) This is a legitimate, nondiscriminatory reason for Wilcox's termination, and Wilcox has

come forward with no evidence that it was in any way pretextual. *See Silk*, 194 F.3d at 799. Accordingly, summary judgment on Count 3 in favor of Jewel is appropriate.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** in its entirety. **IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: November 2, 2002